The first case is 5-23-0248, Jupiter et al. v. Abbott Laboratories et al. Appellant, I understand you will be splitting your time. Yes. Okay. Are you ready to proceed? Yes. You may. Please identify yourself for the record. Good morning, Your Honors, and may it please the Court. I'm Linda Koberly, and I represent Abbott Laboratories. I'm going to focus this morning on venue and form nonconvenience, which are important issues for both of the defendants. Joe Bertocchi is here and will argue for Meade-Johnson, and he will focus on personal jurisdiction, which impacts his client alone. Your Honors, as of this morning, there are 5,000, more than 5,000 actually, plaintiffs in this litigation with claims pending in Madison County. Not one of them has anything to do with the forum. This appeal involves a subset of those, roughly 30 infants who were prioritized for discovery. The defendants moved to transfer two of those cases to Cook County, where the infants were born and treated, and the rest should be either dismissed for form nonconvenience, for refiling where the infants were born and treated, or transferred to a proper venue. And I'll start with venue, which this Court reviews de novo. Now, just a note to start, Your Honors, resolving these appeals requires addressing venue for each plaintiff and each defendant separately. And that's because the matters before the Court are not a single action. They're actually a host of different complaints, two of which name only Abbott. And even within a complaint, the claims of unrelated plaintiffs are separate actions for purposes of venue. Four of these plaintiffs in the prioritized discovery pool name Abbott alone, and one names only Meade. The plaintiffs group these plaintiffs randomly in a single combined complaint, apparently to minimize filing fees. In this Court's decision in Peterson v. Monsanto, it made clear that unrelated plaintiffs are considered to have filed separate actions for purposes of venue. And so for that reason, we ask that the Court consider venue separately. It's also worth noting that most of the plaintiffs who pleaded claims against both defendants shouldn't have, because as we've looked at the medical records, it becomes clear that at the relevant time, each infant generally received products from only one defendant or the other. So both this Court and the Illinois Supreme Court have held that venue based on an office turns on whether the corporation itself, not the employee, purposely selected a physical place as a fixed location in that county for the corporation to carry out its business activities. That's this Court's decision in Mellier and the Supreme Court's decision just a couple of years ago in Toberto. As a matter of law, venue over a corporation can't rest on the personal choices of an individual employee where he lives, whether he answers calls at home or at a coffee shop, where he stores his supplies, how he chooses to sign his e-mails. Those are his choices, not the corporation's choices for purposes of venue. The Supreme Court explained this in the Toberto case. It found that an employee's home office was not a corporate office because, and I'm quoting, even if his proximity to customers played a role in his hiring, that does not mean that the corporation selected his residence as a location to establish and maintain an office. The corporation hired a person. It did not select a new location for conducting its business activities. The same is true here, Your Honors. Two of Abbott's more than 100,000 employees live in Madison County. That is their choice, not Abbott's. The record shows that Abbott did not require them to live there. Their employment would not be affected if they moved. They just happened to live there. In fact, they work in fields. They work from their cars visiting customers. That's why Abbott recommended that they, like all sales representatives, live where they can easily get to their territories, which for these two sales representatives spanned multiple states, and it gave them a car and laptops and office supplies and cell phones that they could take with them. None of that shows that Abbott chose their homes as a fixed place of business. It didn't require them to live there again. It didn't put up a sign. It didn't list their addresses in a phone book. It didn't pay taxes on their homes or pay a portion of their mortgage. There's simply no evidence in this record that Abbott purposely selected to create an office in Madison County. It had no intention or plan to do that before it hired these employees, and it has no plan or intention to do that after it hires these employees. The plaintiffs also urged this Court to evaluate venue on an additional basis as well, which is under the doing business prompt of the statute. And according to the Supreme Court in Moselle, doing business requires an activity by the corporation in the county of such a nature so as, and I'm quoting, to localize the business and make it an operation within the county. Merely soliciting business is not enough, even if that solicitation produces in sheer dollars a substantial amount of revenue for the company. This is important in part because finding venue over a corporation on the basis of doing business or an office doesn't just subject a defendant to litigation over that business or emanating from that office. Finding venue on the basis of doing business would mean that every single case brought against Abbott could be brought in Madison County. That's why the case law requires looking at the corporation as a whole and evaluating its business in the county proportionally in comparison to the corporation's business as a whole. And here we've proved that the percentage of revenue derived from sales into Madison County for Abbott is less than two one-hundredths of one percent of Abbott's sales nationwide. That is less, quite a lot less, actually, than the proportion of sales that other courts, this court, excuse me, this court and the Supreme Court have considered in Illinois to be insufficient to trigger a finding of venue. The plaintiff's only argument really on this score is that Abbott didn't produce all of its national retailer contracts to show that the products on the shelves of the grocery stores in Madison County are sales by the retailers as opposed to sales by Abbott. But there was no failure proof on this issue. Abbott proved the point through uncontroverted testimony. And the plaintiff's actually didn't ask during discovery for every single retailer contract. Abbott produced retailer contracts for the retailers to whom it ships in Madison County. That's Amazon and Walgreens because they have warehouses there, although the products end up all over the place, I assume. And with presented affidavit testimony explaining that the proportion of its sales into Madison County from all sources derived from tax records, including all lines of business, are less than two one-hundredths of one percent, not nearly enough to localize the business in the county. Turning to Foreman. Home offices, counsel, these were the basis for the trial court's ruling. The two home offices were the basis for the trial court's ruling, yes, Your Honor. But the plaintiffs are urging the court to also go on to consider the doing business prong, and we think that actually makes sense as well, partly because we need to move this litigation along in a proper venue, and we've waited quite a long time to get a ruling from the court and even to a ruling from the circuit court and then to get in front of this court. And so given that, we urge the court to answer all of these questions now if possible. When it comes to form nonconvenience, Your Honors, even if venue were proper, these cases should be dismissed for refiling where the infants were born and treated. The most important of the private interest factors here is the availability of third-party witnesses. We've presented evidence that these witnesses, the third-party witnesses who are so critical to these cases, are most likely to be found in the jurisdictions where they actually rendered the treatment, which is not surprising. And we presented evidence of that, and those are — these are, remember, the people who actually selected and administered the products at issue. This isn't just an ordinary personal injury case where you don't necessarily have medical treaters who are critical to the elements of liability. Here they truly are critical to the elements of liability, and those people cannot be called into court in person in Illinois. And with that, Your Honors, I will cede to my co-defendant. Thank you. Good morning, Your Honors. My name is Joel Bertocchi, and I'm pleased to be here representing the Meade-Johnson defendants. And I'm going to address Meade-Johnson's personal jurisdiction claims, which only apply to us, although we do agree with and adopt the arguments of Abbott on venue and form nonconvenience. But for jurisdictional reasons, Meade-Johnson doesn't belong in Illinois at all. This is a case about an Indiana company being sued in Illinois by plaintiffs from another state who were born — the infants were born in another state. They were treated for being premature in other states. They received Meade-Johnson formula in their names, if they received it at all, in other states. They were injured, allegedly, by that Meade-Johnson product and became ill in other states. And whatever damages they suffered as a result were all in other states. The plaintiffs assert both general and specific jurisdiction, which, of course, must be analyzed under each claim. And Judge Ruth did not do that. I'll start by talking about general jurisdiction. There are two forms of general jurisdiction, the principal place of business and your state of incorporation. Meade-Johnson is a Delaware corporation. State of incorporation doesn't enter into it. The question is, where is Meade-Johnson's principal place of business? Now, we spent a lot of time on the Hurts case. Admittedly, the Hurts case is about diversity jurisdiction, and the plaintiff essentially writes it off on those grounds. We don't think Hurts can be written off for purposes of general jurisdiction so easily because you're talking about the same four words, principal place of business. So the Hurts nerve center test, which talks about where's the corporation actually run from, where are those decisions made, and actual is the word. We believe that at least it informs heavily, if not governs, the test in Damier, which goes beyond continuous and systematic to say you are at home. And Justice Ginsburg in Damier chose those words carefully. One is not, as the plaintiffs would have it for Meade-Johnson, at home everywhere you do business. Something has to make what your company does stand out in the state you're suing as compared to its activities elsewhere, and that is not here in this case. They have not shown that Meade-Johnson does anything in Illinois that it doesn't do in other places. And they certainly have not disputed the notion that by the end of 2018, Meade-Johnson's executive group, the people who control and direct the company, have left Illinois and gone back to Evansville, Indiana, where the company had been headquartered for a very long time. Principal place of business raises two questions, what and when. When, as we say, it's the nerve center. It's where the actual direction and control occur, where the company is at home, not everywhere. At home is a unique term, whether it's informed by Hertz or not. Here it is undisputed that since the end of 2018, more than two years before the first of these cases were filed, Meade-Johnson had gone home, if you will, to Evansville, Indiana, and has been at home there ever since. When is another issue that we disagree on. The Illinois cases which we cited in our briefs say that the critical moment for purposes of deciding where the principal place of business is, is when the suit is filed. And honestly, we cited those cases in our brief. That's Illinois law. Judge Meade didn't address that at all. The plaintiffs don't really address that. They want to look back. They want to do what that Ninth Circuit case they cited did and mix apples and oranges, mix specific jurisdiction, which does look back at what was going on when the claims were occurring, and general jurisdiction where the critical point of inquiry never made in this case is when the suits were filed. And quite honestly, that rule makes a lot of sense because a jurisdictional question like that should depend, for general jurisdiction purposes, on when the court is asked to act. That is the most easily discernible point, and that is when the determination needs to be made. And as I said, at those critical points in this case, Meade-Johnson had, for more than two years, been back in Indiana. The plaintiffs also invoke the exceptional case language in the Damer case, footnote 19 of the Damer case. And sometimes it gets referred to as the exceptional case rule, but there's no rule. The important thing to remember about the exceptional case language is it does not add exception to Damer. It is not a catch-all that says you can satisfy Damer or who can have an exceptional case. You still have to satisfy, you still have to show activity in the formed state that goes beyond continuous and systematic to make a company at home. What the evidence the plaintiffs cite for making this an exceptional case are forms. Forms that Meade-Johnson's clerical and ministerial inquiries filled out that listed Illinois even after the company had moved. After, in fact, it was undisputed that, in fact, the headquarters had moved. Those forms are, quite frankly, mistakes. It is not really disputed that they're not. And Hertz, here again, even though it's a diversity case, can inform the analysis. Hertz says jurisdiction is not built on forms and mistakes. Jurisdiction is built on what really happens and where it really happens. And the cases show that we cited in our opening brief over and over. Courts say, yeah, there's a form that says one state, but an affidavit or deposition testimony was submitted from the company saying, no, we actually run our company elsewhere. And that wins. I would direct the court. I don't normally cite a lot of cases in my arguments, but I would direct the court to a case called Wiley v. Red Bull, which we cited. In Wiley v. Red Bull, Red Bull filed a form in California that said our principal office is Santa Monica, California, and that's where our CEO, CFO, and corporate secretary have their offices. That sounds like a lot, but it wasn't enough. When, in fact, Red Bull was run from somewhere else because it's just a form. It's a ministerial, clerical document that doesn't show where you're actually operating your company from. Finally, we'd like to spend a lot of time on Mallory. And, you know, all in respect to Mr. Keller and his success in the case, it's a rabbit hole. The 4-1-4 opinion is impossible to figure out. But the one thing you can figure out from all three of the opinions in the case is Mallory is about a unique Pennsylvania statute that requires consent, that the Pennsylvania courts say requires consent to general jurisdiction if you register to do business. Illinois' statute is not like that. In fact, no one else's statute is like that except Pennsylvania's. But in the Aspen American Insurance case, the Supreme Court of Illinois said, our statute doesn't do that. The plaintiffs contend that, well, you know, that was a holding that was contingent on notions that were now decided in Mallory. That's not. All I can do is invite the court to read Aspen American Insurance with Keller. Because if you do, you will see that what the court was considering there is not the Constitution or anything contingent. It was what the Illinois statute says. And the Illinois jurisdictional statutes don't, and the court held this, we quoted in our brief, but read the case. Those statutes do not require consent to register to do business in Illinois. I want to turn to, in the time I have left, to specific jurisdiction. And honestly, I could begin and end with Rios. Rios decides this case because Rios, the contacts in Rios were more extensive than the contacts between Mee Johnson and Illinois that the plaintiffs, and Mee Johnson and their claims that the plaintiffs have cited. And that wasn't enough. The clinical studies in Rios were about the product that was challenged. Here, the plaintiffs cite Illinois studies, which is a misnomer. You know, three out of 47 study sites in Illinois, that doesn't make it an Illinois study. Meetings near O'Hare don't make it an Illinois study. But there is no, but it was a different product. No plaintiff has alleged that they consumed the product that was in the study, the packaging. I think the mayor case pretty well on that. These products are not manufactured in Illinois. They're sent to Illinois, sterile, put in a bottle, a label is put on them that was written in Indiana, and out they go. That is not enough of a relationship to the product or to the injury. Again, it's got to relate to or arise from the claims. And that isn't related to arising from the claims the plaintiffs make, which is that the fact that we put cow's milk in injured them. But the cow's milk was put in Indiana. It just, it was already here when it got here to be packaged. The marketing studies, same sort of thing as in reals. The key thing there is whatever marketing Mee Johnson did and wherever it was coordinated, it did not reach the eyes and ears of any of the plaintiff's doctors in Illinois. And the same is true of their failure to warn the plaintiff. The warnings that they say we should have given about cow's milk, had they been given, would not have been given to any of these plaintiffs in Illinois. It would have been given in other places. I appreciate the court's attention. Thank you. All right, counsel. Please identify yourself for the record. Good morning, Your Honors, and may it please the court. I'm Ashley Keller for the Applebee's. If you'll indulge me, I'll start with venue first, then I'll turn to personal jurisdiction, which, as you just heard from my friend on the other side, is unique to Mee Johnson, and then I'll turn to foreign nonconvenience. With respect to venue, I think there are two threshold points that need to be made. The first, and I don't think you've heard this from my friend on the other side, but this court in Prairie State, respecting the admonitions from our state supreme court, respects the standard of review. And when the circuit court makes findings of fact, that has to be respected under the highly deferential manifest weight of the evidence standard. And to be clear on this point, when the circuit court has a record before it and it draws inferences from that record, those inferences are also factual findings that have to be reviewed deferentially. So that's the first threshold point that needs to be made with respect to venue. The second point at the threshold that I think turns on the question of statutory interpretation, and I'd like to actually turn to the text of the statute because both of my worthy adversaries on the other side, I think, are conflating an action with a cause of action. But Illinois law is crystal clear, our code of civil procedure is crystal clear, that those are not one and the same thing. So as Your Honors are aware, Section 101 says that an action is properly venued if, first, it's in a county where any defendant is a resident, or, second, the transaction comes out of the same sort of facts that give rise to the cause of action. Those two independent bases for grounding on action in a particular place obviously draws a distinction between an action, which is the complaint that lists all of the parties and all of the different causes of action, and the causes of action, which have to be set forth in a separate count. And this conflation is important because, remember, all of the appellees who are before you are on multi-plaintiff complaints. They chose to file a single action. And Illinois law lets them file a single action under Section 404. They can join into the separate causes of action under Section 614. Now, if the defendants believe that these single actions should be separated, that the plaintiffs shouldn't have joins together on a single action, they have something that they can do about that. They can file a motion to sever. And if the circuit court grants that motion to sever, one action becomes many actions. But they didn't do that. They haven't filed a motion to sever. There's no motion to sever in front of Your Honors. And so you can't, as an appellate court, do their work for them and create separate actions out of one action. So these multi-plaintiff complaints where both defendants are listed as defendants involve multi-plaintiffs and two defendants. If any defendant is properly venued in Madison County, that is sufficient under the first prong of the statute. And so this conflation between the two things, I think, is inconsistent with the statutory text in the Illinois Code of Civil Procedure. And so you would hold that the alleged open offices was sufficient? Yes, I would, Your Honor. Do you agree that the factual findings made by Judge Ruth were a mistake? What actually happened out of the way those folks worked as opposed to just basically working on it? Yes, I do believe that Judge Ruth's factual findings are correct. And I certainly believe that Judge Ruth's factual findings can't be disturbed under a manifest weight of the evidence standard. And so what Judge Ruth found was that these two employees listed in their work email signature blocks their home addresses. And what he also found, drawing an inference from the factual record, which was completely appropriate for him to do, is that no reasonable person would list their home address if they weren't told to do it by their employer. Now, this Court might not agree with that as a matter of first impression if you were deciding it de novo. But respecting the standard of review under a manifest weight of the evidence standard, of course a reasonable circuit court judge could say, employees don't want to list their home addresses if they don't have to. So that's a factual finding that Judge Ruth made that I think is entitled to respect in an appellate posture. It also inures to the benefit of adding. We all know how work emails function. When you send out a work email from your work email address to a customer, to someone who's engaged in business with Abbott, Abbott gets a benefit from that hospital thinking Abbott's got a footprint in Madison County. Abbott is nearby. They actually have invested resources to service this area. And the person receiving that email doesn't assume that that's the employee's house. They assume that that is something that Abbott has blessed as a place where Abbott is going to be doing business. And so I do think that Judge Ruth's factual findings with respect to those two employees is entitled to deference. I actually think it's affirmatively correct, but certainly under a manifest weight of the evidence standard. I think that this Court shouldn't disturb that factual finding. And Abbott having an office in Madison County can be the beginning and the end of the inquiry. But as you heard my friend on the other side say, we are also asking this Court to consider the other prong of establishing that a corporation has residence. And I would focus here on Mead-Johnson and the WIC contract. This contract essentially establishes for Mead-Johnson in a highly profitable way that they have an essential good that needs to be supplied to the citizens of Madison County, that this formula product is crucial and so it needs to always be in stock. That is localizing their business in a unique way that I don't think that is comparable to just the percentage of sales that they do in Madison County. It's a particular type of contract that they've entered with the State to ensure that this essential product is always going to be available and on the shelves. And so that can be a completely independent prong to support venue. Let me, if I could, turn to personal jurisdiction unless you have other questions on venue. And so I think the easiest place to start with respect to personal jurisdiction and Mead-Johnson is with specific jurisdiction. It's always easier to deal, I think, with specific jurisdiction as opposed to general jurisdiction. And let's start with the uncontested facts here. Mead-Johnson was an Illinois company in 2008 and it stayed an Illinois company for a decade. Both sides agree on that. The reason it was an Illinois company was because its principal place of business was here. All of the activity of the corporation was here. The key decisions of the corporation were made here. Then let's look, I'm sorry. Is it possible when a company is bought out by another company that they can move their business and cease to do business? Yes, it is absolutely possible for that to happen. But with respect to specific jurisdiction, let's keep in mind from the period of time of 2008, a decade forward, there's no dispute that they hadn't moved yet. They were in Illinois. And the Supreme Court of the United States' key decision on specific jurisdiction as opposed to general jurisdiction is the Ford Motor case at Post-8s Reims. And what the Ford Motor case says is that if the claim that the plaintiff is bringing arises out of or relates to, and the court makes very clear that or means or, not and, then if the claim arises out of or relates to the defendant's contact in the forum, then there is specific jurisdiction and the due process clause is satisfied. Let's look at the claims that the plaintiffs who were injured between 2008 and 2018 or 19 were bringing. They're bringing failure to warn claims. Where was the decision made not to warn about the risks of this product? For those plaintiffs, it was made in Illinois. That's where Meade Johnson was. They hadn't moved yet, Your Honor. They're bringing design defect claims. Where was the decision made to defectively design this product and to put it in the stream of commerce as a dangerous product that was unreasonable and unsafe to the people consuming it? It was made right here in Illinois. The breach occurred in Illinois for the plaintiffs who are in that time period. So forget the fact that they've moved. That's something that's more relevant to the general jurisdiction question. The claims of those plaintiffs arise out of or relate to Illinois-based decisions of an undisputedly Illinois company for that period of time. So for the overwhelming majority of appellees who are in front of Your Honors, specific jurisdiction does the job. Of course it doesn't offend traditional notions of fair play and substantial justice, which is the 14th Amendment constitutional standard, to say that an Illinois company that made Illinois choices about what to do with the product that they were putting into the stream of commerce that injured these plaintiffs can be held accountable right here in Illinois. There's nothing in Rios that's incompatible with the Ford Motor Rule, and we all agree that the only thing that matters here are the limits of the 14th Amendment's due process clause, so specific jurisdiction can do the overwhelming majority of work for Your Honors. But then let's turn to general jurisdiction. I actually agree with my friend on the other side. There's no exception to the rule that was announced in Daimler. There's general jurisdiction where a company is incorporated, which is Delaware. That's not here, but where the company is at home. And the Supreme Court reiterates in Daimler that you can be at home more than just in the place where you have your principal place of business. Oftentimes you will only be at home where you have your principal place of business, but not always. And the Supreme Court reaffirmed the precedent that said a company that because of World War II put a footprint down in Ohio was effectively at home in Ohio. And the record here establishes that even though Meade Johnson sold itself and it decided that it potentially didn't want to be an Illinois company, not just one or two forms were filed. A dozen-plus forms were filed, sometimes under penalties of perjury, saying that they were still an Illinois company. By the way, I don't think that the people who filed those forms were misrepresenting anything. They really believed it. Those employees sincerely believed that Meade Johnson was still an Illinois company. Why? Because home is where the heart is. And so if these people sincerely, subjectively thought that the operations of the business were still so localized and that this was the center of gravity, of course that can be a probative set of facts that helps the Court have confidence that Meade Johnson was still at home here. So I completely agree with the premise of Your Honor's question. Businesses can move. Businesses can sell themselves. But they have to actually move their principal place of business, the center of gravity of the corporation, to the other state. If they haven't done so, and the evidence here helps establish that Meade Johnson didn't during the relevant time periods, that can support general jurisdiction. Let me turn to Mallory, and my friend on the other side flattered me, but I don't have any monopoly on what Mallory means. But I think it's pretty straightforward. It confirms Pennsylvania Fire. Pennsylvania Fire is a unanimous 1917 Oliver Wendell Holmes decision that says that corporations can consent to personal jurisdiction as the price of doing business in a state. And if you look at old Illinois Supreme Court precedents construing our state's registration statute, in 1923 the Illinois Supreme Court, in American Hyde Letter, said that our registration statute does require corporations like Meade Johnson to consent to jurisdiction. Is it still good law after you have all the line cases brought to Dynamo? I think it is still good law, Your Honor. That is the relevant question, actually, from my perspective. Is it still good law in light of Dynamo? This is a Federal constitutional standard. And, of course, our Supreme Court is supreme on state law, but the U.S. Supreme Court is supreme on what the Federal Constitution means. That was the whole fight in Mallory. Does Dynamo effectively overrule Pennsylvania Fire? And the Supreme Court answered, no, it doesn't. And my friend on the other side says it's a fractured opinion, but there are five votes to say that Pennsylvania Fire has not been overturned, that cases like American Hyde Letter are correctly decided. And so it is true that our State Supreme Court, in Aspen, said, in light of Daimler, in light of Goodyear, we have to change our interpretation of our registration statute and what it's doing. And they've now received clarification from the U.S. Supreme Court that, no, the old interpretation of American Hyde Letter is correct. This is not some novel rule, by the way. You can look to the MDL court. In this very tort at the Northern District of Illinois as persuasive authority, it turns out that a lot of Midwestern states use the same type of language for their registration statutes as Illinois. They modeled their statutes on Illinois. And Missouri, just down the road, is one of those states. It has language that's virtually identical to Illinois' registration statute. It says that foreign corporations, when they come into the state, they have to agree by registering to the same rights and privileges as domestic corporations. That's what the Illinois statute says. That's what the Missouri statute says. The Missouri Supreme Court had an opinion, just like our Supreme Court at Aspen. Their opinion was called Dolan. And it said, in light of Daimler, in light of Goodyear, we can no longer give our registration statute the interpretation that it confers consent to personal jurisdiction. The MDL court said, that's no longer good law in light of Mallory. Even though, of course, the Missouri Supreme Court is supreme on Missouri law, the U.S. Supreme Court has clarified Pennsylvania Fire is the correct interpretation of the due process clause. And so you can use the Illinois registration statute separate and apart from whether Meade Johnson was at home in Illinois during the small period of time that's relevant for only a small sliver of plaintiffs to say that they have consented to jurisdiction. Let me turn, if I could, Your Honors, to forum law. And I want to return to an important theme that we talked about in venue, that there's a difference between an action and a cause of action. You have multi-plaintiff complaints. Many plaintiffs on the same action with both defendants on each one of those complaints. They're not separate actions. They haven't moved to separate. As Your Honors are keenly aware, forum law is a highly discretionary judgment call of the circuit court. It's not a creature of statute in Illinois. It's a pure creature of equity. They bear a heavy burden. And it's a relative inquiry. It's not about whether the plaintiffs have any contact with Madison County. It's about whether the place they want to send the action to, the action to, is more convenient. They haven't even told you where they want to send the action to in a cogent way. They simply say send it to the place where the plaintiff child was born. But there's no single place where the plaintiff child was born on a multi-plaintiff complaint. There are many children. So they say that the circuit court didn't go through the proper analysis in analyzing the public and private interest factors because they didn't meet their burden at the threshold to even tell them where they were sending these cases. You can't do a severance on appeal for the first time. And so they have to come up with this rule that pretends that there are multiple actions here because there are multiple plaintiffs on the complaint. But that just disrespects the joinder rules that Illinois law countenances. So you can't do a relative weighting. You can't say whether this place or that place is more convenient to the parties, supports the public interest factors, if they can't even cogently identify where they want to send this case. So Judge Ruth can't be faulted for them failing in their burden of proof. Even beyond that, they don't identify all of the witnesses that are going to be relevant to testify at trial. So you can't put that into the weighting if they haven't met their burden. Similarly, they make the argument to the court that they promise they're going to bring all of their corporate witnesses, and so that obviates the need to look at the State of Illinois as a convenient place to file this suit. But the parties aren't allowed to jury-rig the forum non-inquiry by saying, don't worry, we'll put our employees on airplanes and send them where we want the case to go. That's just giving them an advantage, a tactical litigation advantage, that is nowhere contained in the balancing factors that have traditionally gone into the forum non-inquiry. So, Your Honors, I'm happy to cede back time, but if you have any questions, of course I'll field them. Thank you, Your Honors. I'm being here, Your Honors. Taberta decides this case. Taberta makes perfectly clear that the question is whether, under the totality of the circumstances, there is evidence that the corporation purposely chose to establish and maintain an office in the county. There is no factual finding here that Abbott purposely chose to establish and maintain a corporate office. There is no factual finding on that issue to defer to. In fact, that's an ultimate conclusion. It's a legal conclusion, and under the Supreme Court's decision in Corral, it's reviewed de novo. Even if the employees – I'm sorry. Your opposing counsel indicates that if we looked at judgment's order, we're going to try to make it a factual finding, and we should apply it and basically abstain it. So why is that not correct? The factual findings that the judge made were that they have home offices, that the home offices are in Madison County, and that they put their home addresses and email signatures, these two individuals. And then he makes some speculation about why they might have done that, that the plaintiffs agree there was no evidence to support. They agree that there was never any testimony that Abbott required them to use their home addresses. But even if you assume that – and so here's why I think those factual findings, those are factual findings. We think they're against the manifesto of the evidence. But even if you don't go that far, because the only evidence in the record was a witness saying, I don't know what these two employees did. And also there was unequivocal evidence in the record that these two employees worked full time from the road and not at a fixed location. But setting that aside, Your Honor, even if these employees did use their home addresses and email, and even if Abbott required it, and again, no evidence of either of those things, it is still not sufficient as a matter of law to subject the entire corporation to suit in Madison County for every action, no matter where it arises, solely on that basis. There is no evidence or finding that Abbott benefited from having an office in Madison County. What counsel just said, if the podium is totally unsupported in the record and there's no finding. There's no evidence or finding that Abbott published the home addresses in any directory or phone book. In fact, we proved that it did not. There's no evidence or finding that Abbott ever arranged for zoning and put up a sign outside their houses. So, of course, if someone relied to their detriment on one of those emails and on the alleged fact that it listed, then that suit could be brought in Madison County under the transaction prompt. But that is all. And I did want to just quickly take issue. We did seek a severance. If you look at our motions in the trial court, we did seek severance. We sought to sever each of the cases that are currently before the court from their multi-plaintiff complaint, and we made that request in our briefs seeking dismissal and transfer. So we did seek to sever because those individual plaintiff's complaints have nothing to do with one another whatsoever, and the plaintiffs cannot create a situation of scattered witnesses by arbitrarily grouping multiple plaintiffs in a single complaint with no rhyme or reason. Thank you. Well, since I talk fast, I'll try. Mr. Keller mentions the WIC contract. The WIC contract is a different kind of product. It's products sold in stores. The products at issue in this case are administered in NICUs, and there isn't even a NICU in Madison County. More to the point, it's a statewide contract, and needs obligations under the WIC contract in Madison County are the same as they are everywhere else in Illinois. So there again, it does not reflect a localization of needs business in Madison County in a way that it is not localized everywhere. And if that's what they're relying on, they're talking about universal venue, and universal venue is not a thing under our statute. Mr. Keller mentioned the Ford case. I hope you read the Ford case. The Ford case found personal jurisdiction because the injury, because even though Fords are made somewhere else and designed somewhere else, the accidents occurred in the state where they sued. We don't dispute that the plaintiffs can sue me, Johnson, where they consumed our products, where they became sick, where they were treated. We don't disagree with that. Mr. Keller says, well, that means they have to go all over the place. Well, if they have to go all over the place, they have to go all over the place. But jurisdiction is jurisdiction, and the restrictions on it are of constitutional dimension. Rios decides this case. Rios, in the opening paragraph, refers to an out-of-state defendant, out-of-state plaintiffs for personal injuries suffered outside Illinois from a device manufactured outside Illinois. That is this case. And in Rios, where jurisdiction was found wanting, they were actually talking about the challenged product. All the specific, all the studies, all the marketing that they cite, were not about the products that they challenged, that they say made them sick. And even the failure to warn, although the failure to warn, the warnings were undoubtedly the evidences that the scientific decisions at New Johnson, even during the period when the headquarters were made in Evansville, Indiana, that's always been, and we've cited the record for that, the scientific place for New Johnson, even during that interlude. But they don't, but Rios, again, Rios is a case that has way more connections to Illinois than this case has for New Johnson. Jurisdiction was wanting. The Perkins case is worth noting. I agree. We analyzed it, too. Go ahead. Thank you. It's the only exceptional case the Supreme Court could find, is to go back to a case where somebody was displaced in World War II, and the only place those people could, that company could have been sued was Ohio. Here, the plaintiffs have lots of other options. They can sue in a state where they were. They can sue in Indiana. All of those things are available to them. And one more point, if I may, Your Honor, and then I will stop. Mr. Carroll downplays the value of his advocacy of Mallory. Please read Aspen. Aspen did not make its holding in light of Daimler, in light of anything. It made its own in light of what the statute says. The plaintiffs argued the Illinois statute means when you register, you consent. And the Supreme Court said that's not what the statute says. It's not a constitutional case. It's a statute, a construction of the Illinois statutes, no more, no less. Thank you, Your Honor. We would ask that all of the court to vote on all the decisions that have been given. I have a question. Yes, sir. First, I want to say that your friends told you you talk fast. We're right. Say a word. But my question is about counsel's statement about the cases he says happened between 2008 and 2018. Yes. What about jurisdiction on those cases? Well, Your Honor, in those cases, the claims that they're making aren't related to what, to the product. They're talking about it, how it is that the injury happened to them. Their claim is putting cow's milk in these formulas caused the injury. Nobody in Illinois made that decision. Those decisions were made decades ago in Indiana when the company was originally headquartered in Indiana. We've proved undisputedly that the place where the decisions about what goes on labels and what goes into products are made has always been Indiana. And so even though the company may have been headquartered there, that doesn't – and remember, Mr. Keller was talking about specific jurisdiction at that point. He's mixing apples and oranges, just like that Ninth Circuit panel did. Well, I understand that it's a specific jurisdiction. Yes. But wouldn't those cases have a specific jurisdiction if those cases originated from Mississippi? If anything related – if anything related to or arising from – and I agree it's or – the actual plaintiff's claims happened in Illinois, yes. But the fact that the CEO is here doesn't mean that the guys who were making the decisions about the ingredients for the products and about what to write about, they were in Indiana and they always have been. And were those facts established? Yes. We had – I can't remember the site off the top of my head, but there are sites in our brief to the fact that the scientific hub of Mead Johnson, which is where the decisions about what those ingredient products are made, has always been in Indiana since time immemorial and remained there during that interlude. So, again, you've got to look closely at what it is the plaintiffs say happened to them. They say they were injured by an ingredient that shouldn't have been there. That ingredient was put there in Indiana both in terms of scientific planning but also actually put there, manufactured there. So that interlude doesn't make any difference. Thank you, counsel. I appreciate it. Thank you, counsel. We will take this matter under advisement and issue a ruling in due course. Thank you.